UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH A. MCQUAID, *Individually and as the Administrator of the Estate of Dominic Ingle*,<br>　　　　　Plaintiff<br><br>　　　v.<br><br>JOHN WETZEL, *et al.*,<br>　　　　　Defendants | CIVIL NO. 4:21-CV-02019<br><br>(WILSON, D.J.**)**<br><br>(ARBUCKLE, M.J.) |

**ORDER**

**I.    INTRODUCTION**

Plaintiff has subpoenaed Dr. Laurel Harry, the Superintendent of SCI Camp Hill during the events of this lawsuit and now Secretary of the Department of Corrections, for deposition. On March 12, 2025, a telephone conference was held via Teams in response to letters from counsel raising discovery disputes. (Docs. 79, 81). In accordance with the Court's policy on discovery, after discussion, defense counsel was granted permission to file a motion to quash the subpoena requiring Dr. Harry's attendance at a deposition. The motion, (Doc. 82), and brief in support, (Doc. 83,) were filed on March 12, 2025. Plaintiff's brief in opposition, (Doc. 87), with twenty-one (21) exhibits, was filed on March 19, 2025. A reply brief, (Doc. 88), with eleven (11) exhibits, was filed on March 24, 2025.[1] The matter is ripe for decision.

---

[1] Plaintiff's brief in opposition, (Doc. 87), and Dr. Harry's reply brief, (Doc. 88), provided the Court with over 1100 pages of exhibits.

## II.  PROCEDURAL HISTORY

State inmate Dominic Ingle hung himself in his cell on December 4, 2019, and died eleven days later from his injuries while incarcerated at SCI Camp Hill. His estate, through his father Joseph A. McQuaid ("Plaintiff"), initiated this action in federal court, (Doc. 1), seeking damages against officials and employees of the Pennsylvania Department of Corrections, the medical company contracted to provide care at the facility, and employees of the medical company. Ingle's lengthy history of mental illness and incarceration is set forth in our earlier Report and Recommendation, (Doc. 50, pp. 2-9), is familiar to the parties, and will not be repeated herein. In that Report we recommended dismissal of the *Monell* claims against Dr. Harry, (Doc. 50., pp. 13-19), but recommended the personal capacity claims against Dr. Harry proceed, (Doc. 50, pp. 19- 24), and that qualified immunity not be applied at that stage, (Doc. 50, pp. 24-31). Judge Wilson adopted in part and denied in part the Report and by Order, (Doc. 61), and dismissed all claims against Dr. Harry while giving Plaintiff leave to file a second amended complaint. No second amended complaint was filed, and Dr. Harry was terminated from this lawsuit on November 23, 2022.

Beginning in August 2024, Plaintiff's counsel sought to schedule depositions of numerous employees of the DOC, including Dr. Harry. (Doc. 87-5). Counsel communicated regularly about dates for those depositions, including Dr. Harry's,

and filed a joint motion to extend the discovery deadline, (Doc. 75), which was granted, (Doc. 76). The email exchanges regarding scheduling of depositions continued until February 19, 2025, when for the first time, counsel for the remaining Corrections Defendants, the Attorney General's Office, objected to the deposition of Dr. Harry.[2] As noted in the Introduction above, the motion to quash, (Doc. 82), was then filed.

In support of the motion, the Attorney General contends that: (1) the Plaintiff has not demonstrated the relevance of Dr. Harry's testimony; (2) now Commissioner Harry's policy-based testimony is barred by the "apex doctrine;" and (3) the objection is timely. (Doc. 83, p. 3).

Plaintiff responds that: (1) the remaining Corrections Defendants lack standing to object; (2) the requirements for the application of the "apex doctrine" have not been met, and (3) the delay in time from the first request to depose and the filing of the motion makes the motion at this juncture "unfair." (Doc. 87).

In the Reply Brief, (Doc. 88), defense counsel argues that the Attorney General represents both the remaining correction defendants and Dr. Harry, making the standing objection "an irrelevant distraction."

Defense counsel then argues as to relevance that to prevail on the remaining claims, Plaintiff must show that each remaining Defendant, which Dr. Harry is not,

---

[2] *See* Doc. 87, pp. 2-6.

"knew or should have known" that there was a "strong likelihood" that Mr. Ingle would attempt suicide, and that each remaining Defendant "acted with reckless or deliberate indifference" to that risk. (Doc. 83, p. 3).[3] Dr. Harry disputes that her testimony would be relevant, arguing that the remaining Corrections Defendants admitted that they knew Ingles was a suicide risk, thereby providing the necessary information from "lower level" employees, invoking the apex doctrine.

We will address each contention in turn.

### III. LEGAL STANDARD – MOTION TO QUASH

Rule 45(d) of the Federal Rules of Civil Procedure states in relevant part:

**(d)** **Protecting a Person Subject to a Subpoena; Enforcement.**

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;

    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    **(iv)** subjects a person to undue burden.

---

[3] Citing *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017).

**(B)** *When Permitted*. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative*. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

Discovery is not limited to admissible evidence but must be relevant to the issues in each case and proportional to the needs of the case.[4] The courts have broad discretion when deciding discovery questions.

> Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment.
>
> . . . .
>
> This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters.

---

[4] Fed. R. Civ. P. 26(b)(1).

. . . .

"The 'apex doctrine' is an analytical framework used by courts in assessing whether to permit the depositions of individuals at the 'apex' of corporations and other entities. The doctrine recognizes that depositions of high-level officers severely burdens those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage." *United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. CV 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015).

> In deciding if the deposition of an individual at the 'apex' of a corporation or other entity is appropriate, district courts within the Third Circuit consider two factors: "1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods." *Cartagena v. Serv. Source, Inc.*, No. 1:17-CV-742, 2019 WL 355728, at *4 (M.D. Pa. Jan. 29, 2019).[5]

## IV. DISCUSSION

### A. STANDING TO MOVE TO QUASH

We do not need to answer the question of the remaining Corrections Defendants standing to quash the subpoena. We interpret the motion to quash, (Doc. 82), as brought by the proposed witness, non-party Dr. Laurel Harry. She clearly has standing.

---

[5] *George v. Pennsylvania Tpk. Comm'n*, No. 1:18-CV-766, 2020 WL 2745724, at *1–3 (M.D. Pa. May 27, 2020).

B.   **RELEVANCE OF INFORMATION SOUGHT VIA DEPOSITION**

The Plaintiff has established the relevance of Dr. Harry's testimony about her personal involvement in the placement of Ingle while at SCI Camp Hill and the investigation following his death by suicide. We note in particular the following exhibits attached to Plaintiff's brief in opposition:

(1) Exhibit "K" 10/17-10/18/2019 SCI-Camp Hill emails regarding placement of Mr. Ingle in a POC (copied to Dr. Harry on 10/18/2019). (Doc. 87-14).

(2) Exhibit "M" Email thread starting with a 12/4/2019 email from Dr. Harry summarizing the known circumstances surrounding Mr. Ingle's suicide within an hour of its occurrence and ending with 12/5 and 12/6/2019 emails regarding Dr. Harry's requested information about Mr. Ingle's girlfriend. (Doc. 87-16).

(3) Exhibit "N" Draft Clinical Review Report dated 1/23/2020 from Dr. Harry for suicide investigation of Mr. Ingle. (Doc. 87-17).

(4) Exhibit "O" Selected relevant pages of the deposition (Part 2) of Dr. Elicia Stein. (Doc. 87-18).

(5) Exhibit "P" Email thread starting with emails of 1/8/2020, including those from Dr. Harry seeking additional information about Ingle from parole and ending with a request for additional information from Dr. Harry to SCI-Camp Hill employee Carberry dated 1/9/2020. (Doc. 87-19).

(6) Exhibit "Q" Emails of 12/2/2021 between Dr. Harry and her assistant about the instant lawsuit and Dr. Harry's statement that she had been deposed about the incident "3-4 years ago." (Doc. 87-20).

(7) Exhibit "R" Email thread of 1/27-1/28/2020 regarding Mr. Ingle's death designated by prison as "Natural" and Dr. Harry's discussions that it should be changed to "Suicide." (Doc. 87-21).

These exhibits establish, to the Court's satisfaction, that Dr. Harry had both personal knowledge and involvement in the institutional placement before and investigation after the death of Mr. Ingle. Her testimony on these topics is relevant.

### C. APPLICATION OF THE "APEX DOCTRINE"

In reviewing the record, we must apply two factors: 1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods.

For the reasons stated in the previous section I find that Dr. Harry has personal and unique knowledge on relevant subjects. While counsel for Dr. Harry has pointed out ways that the information sought was and could be gleaned from lower-level employees, I am not satisfied that her testimony would necessarily be cumulative, especially regarding her understanding of the DOC policies on suicide prevention as it related to her supervision of the post incident investigation.[6] The apex doctrine does not apply to these limited areas.

### D. TIMELINESS OF THE OBJECTION

While the objection to Dr. Harry's deposition could have been raised when her name was first listed as a possible witness, Plaintiff has not shown how the

---

[6] *See* Doc. 83, p. 5 (the witness's knowledge of the Mental Health Care policy), p. 6 (cumulative discussion of the policy matters by thirteen other witnesses).

timing in this case has prejudiced his development of the record. The objection based on timing is denied.

## V. CONCLUSION

Plaintiff has established the relevance and proportionality of the testimony of Dr. Harry if it is limited to matters within her personal knowledge when she was the Superintendent of S.C.I. Camp Hill. With these limitations the apex doctrine does not apply. The Court has discretion to limit discovery and, in this case, will do so.

## VI. ORDER

Accordingly, it is HEREBY ORDERED THAT:

(1) Dr. Harry's motion to quash her deposition subpoena, (Doc. 82), is DENIED.

(2) Plaintiff may depose Dr. Harry on her personal knowledge and her understanding of the DOC policies on suicide prevention as it relates to her supervision of the post incident investigation and her personal involvement in the investigation.

(3) Dr. Harry's deposition will be limited to not more than three hours.

(4) The parties will cooperate to find a mutually convenient time and place to conduct the deposition on or before Wednesday, May 21, 2025.

Date: April 22, 2025

BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge